UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON DENISE JONES,

               Plaintiff,                  Case No. 2:15-cv-10171
                                             Judge David M. Lawson
v.                                   Magistrate Judge Anthony P. Patti

U.S. DEPARTMENT OF
EDUCATION, et al.,

               Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT PIONEER CREDIT RECOVERY, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT (DE 9) and
DEFENDANTS WAYNE STATE UNIVERSITY AND APRIL EWING-
MILES'S MOTION TO DISMISS (DE 11)**

**I.**    **RECOMMENDATION:** The Court should **(a)** deny without prejudice

Defendant Pioneer Credit Recovery, Inc.'s motion (DE 9) to dismiss Plaintiff's

complaint (DE 1), **(b)** deny without prejudice Defendant Wayne State University

and April Ewing-Miles's motion to dismiss (DE 11) and **(c)** enter an order

permitting Plaintiff to file an amended complaint in accordance with Fed. R. Civ.

P. 15(a).

**II.**    **REPORT:**

      **A.**    **Factual Background**

This case concerns allegedly wrongful student loan collection efforts. Sharon Denise Jones filed her January 15, 2015 complaint against five defendants: the United States Department of Education (USDE); Arne Duncan, Secretary of the USDE; Wayne State University (WSU); Pioneer Credit Recovery, Inc. (PCR); and April Ewing-Miles. (DE 1 ¶¶ 5-9.) She describes her complaint as concerning "the unconstitutional and discriminatory taking of property . . . ." (DE 1 at 1.) Plaintiff seeks injunctive relief, refund of all moneys collected and compensation for all harm caused, as well as any other relief that the Court deems just and proper. (DE 1 at 12 ¶¶ A-C.)

### B.    Instant Matters

Judge Lawson has referred this case to me for all pretrial matters. (DE 4.) Currently before the Court are Defendant PCR's August 3, 2015 motion to dismiss Plaintiff's complaint (DE 9) and Defendants WSU and Ewing-Miles's August 3, 2015 motion to dismiss (DE 11). Plaintiff filed a combined response. (DE 18.)

### C.    Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not

contain "detailed factual allegations," but it must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference

depends on a host of considerations, including common sense and the strength of

competing explanations for the defendant's conduct." *16630 Southfield Ltd.,*

*P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).[1] Moreover, as Defendant PCR correctly notes, "courts may not

rewrite a complaint to include claims that were never presented . . . nor may courts

---

[1] Plaintiff filed her complaint *pro se* and is proceeding *in forma pauperis*. (*See* DE
1 at 12, DEs 2, 3, 4 & 5.) However, noting the references in Plaintiff's complaint
to WSU's law school (*see* DE 1 ¶¶ 12, 13, 16, 54 & 55), the Court assumes
Plaintiff to be attorney Sharon D. Jones (P57113). (*See* www.michbar.gov,
"Member Directory.")

3

construct the plaintiff's legal arguments for [her]," and "[n]either may the court 'conjure up unpled allegations,' . . . ." *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.) (citations omitted).

### D.   Analysis

#### 1.   The administrative record illuminates this case's factual timeline.

On October 6, 2015, the government defendants filed a copy of the administrative record.  (DE 21, DE 21-1.)  "The Court may consider public records and other facts capable of being judicially noticed without converting a motion to dismiss to one for summary judgment."  *ASF3, Inc v. United States*, No. 14-13444, 2015 WL 5697681, at *1 n.1 (E.D. Mich. Sept. 29, 2015) (citing *New England Health Care Employee Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).  Also, "[t]he Court may take judicial notice of an administrative record without converting a motion into one for summary judgment."  *Id.* (quotation and citation omitted).

Plaintiff attended WSU from approximately 1993 through 1997.  (DE 1 ¶ 4.) With the benefit of the administrative record, the Court is able to discern the following timeline:

- On September 19, 1993, Plaintiff, then Sharon D. Brookins, received a $1,000 Federal Perkins Loan.  (DE 21-1 at 42, 69.)

4

- On January 26, 1994, Plaintiff received a $1,000 Federal Perkins Loan.  (DE 21-1 at 41, 62, 68.)

- On August 4, 1995, Plaintiff completed a Perkins Loan Data Sheet.  (DE 21-1 at 65.)

- On November 13, 1995, Plaintiff received a $1,000 Federal Perkins Loan. (DE 21-1 at 43, 70.)

- On January 10, 1996, Plaintiff received a $1,000 Federal Perkins Loan.  (DE 21-1 at 44, 71.)

- On August 20, 1996, Plaintiff executed a Federal Perkins Loan Promissory Note in the amount of $2,500.  (DE 21-1 at 45, 72.)

Plaintiff graduated from WSU in 1997.  She claims that she "repaid all emergency loans received under the terms set by WSU law school, and repaid these funds in full by 1997."  (DE 1 ¶ 12.)[2]  Still, the administrative record evidences continuing efforts to collect:

- In August 2005, it was determined that Plaintiff's address was 111 E. Kirby St., Apt. 23, Detroit, MI 48202-4003.  (DE 21-1 at 64.)

- On September 14, 2005, Plaintiff electronically mailed April Opheli Ewing-Miles regarding a Perkins Loan repayment notice she received.  (DE 21-1 at 50; *see also* DE 1 ¶¶ 14-15.)

- By a letter dated October 13, 2005, WSU Loan Manager April Ewing-Miles wrote to Plaintiff, apparently now Sharon Brookins-Jones, explaining, among other things, that "correspondences ceased until recently when a new address was found."  (DE 21-1 at 51.)

---

[2] On August 11, 1998, Plaintiff filed a Chapter 7 voluntary bankruptcy petition. An order discharging debtor was entered on November 12, 1998, but the case was reopened on February 28, 2003.  (*See* Case No. 98-54090 (Bankr. E.D. Mich.); DE 21-1 at 67.)

- Based upon a Federal Perkins Loan Program/NDSL Assignment Form, it appears that Plaintiff's loan was in default on November 2, 2005, and, on February 28, 2007, it was accelerated.  At that point, the total amount outstanding appears to have been $8,153.88, or $6,500 in principal amount loaned and $1,651.88 in interest due.  (DE 21-1 at 38-40.)

- On February 7, 2006, a final decree was entered in Plaintiff's bankruptcy case.  (*See* Case No. 98-54090 (Bankr. E.D. Mich.); DE 21-1 at 67.)

- By a letter dated February 6, 2007, Ewing-Miles wrote to Plaintiff, citing the Bankruptcy Reform Acts of 1979 & 1984 and section 971 of the Higher Education Amendment of 1998 and explaining that her outstanding tuition/loans balance did not meet the criteria for discharge.  (DE 21-1 at 66.)

- By a letter to WSU / Ewing-Miles dated August 13, 2009, Williams & Fudge, Inc., acknowledged receipt of accounts for collection.  (DE 21-1 at 78.)

- On October 9, 2009, Plaintiff wrote to Williams & Fudge, Inc., stating, among other things, that she did not owe their client WSU "any money whatsoever."  (DE 21-1 at 60-61.)

- It seems that Plaintiff's debt was transferred to the USDE on or about November 16, 2010.  (DE 21-1 at 33; *see also* DE 1 ¶¶ 7, 35.)  At the time of the assignment from WSU to the USDE, the claimed balance was $6,500 in unpaid principal, $1,651.88 in accrued interest, and $2.00 in fees.  (DE 21-1 at 27.)

- By a letter dated May 17, 2011, Plaintiff was informed that the USDE had assigned her account to Pioneer Credit Recovery, Inc. for collection.  At that time, the alleged balance was $10,307.55, comprised of $6,500 in principal, $1,789.81 in interest and $2,017.74 in fees and costs.  (DE 21-1 at 32)

- The USDE's June 1, 2011 debt statement, which was apparently mailed to Plaintiff at her Eastpointe, Michigan address, indicated that $1,729.50 had been paid to the USDE, but also that a total of $8,302.27 ($6,500 in current

6

principal and $1,802.27 in current accrued interest) was eligible for offset by the date of the debt statement.  (DE 21-1 at 33; *see also* DE 1 ¶ 20.)

- By a letter dated August 20, 2011, Federal Student Aid (FSA) informed Plaintiff, among other things:  "**You state that this debt has been paid in full.  Because the former holder of the promissory notes certified a balance due on these loans, *we need specific evidence* from you that this debt has been settled.**"  The letter also informed Plaintiff that the balance on her account was $10,412.75, including $6,500 in unpaid principal and $1,874.42 in accrued interest.  Plaintiff was further informed that collection costs were projected to total $2,038.33.  (DE 21-1 at 26-28 (emphasis added); *see also* DE 1 ¶¶ 30-32.)

- On September 22, 2011, Plaintiff e-mailed Dean Sharon Morey Brown, who responded that she had been away from the law school for more than 10 years.  (DE 21-1 at 29-30.)

It seems that 2012 passed without any correspondence of record.  However, it does appear that the USDE received Plaintiff's first payment on April 26, 2012, in the amount of $250.00, by way of a tax offset and that the USDE received a $4,188 offset payment on July 26, 2012.  (DE 21-1 at 4; DE 1 ¶¶ 17-18.)  Then, in 2013, correspondence of record resumed:

- On January 14, 2013, Plaintiff wrote to WSU's Office of General Counsel seeking records regarding her Perkins loan(s).  (DE 21-1 at 34-36.)

- A February 11, 2013 account inquiry seems to confirm the above-mentioned total balance of $8,153.88 at the time of the assignment from WSU to the USDE.  (DE 21-1 at 52-59.)

- By a letter dated March 5, 2013, WSU's Assistant General Counsel responded to Plaintiff's January 14, 2013 FOIA request.  (DE 21-1 at 37.)

- On June 4, 2014, Plaintiff completed a request for review.  (DE 21-1 at 16-17; *see also* DE 1 ¶ 23.)  She also attached a letter in support, dated June 5,

7

2014. Among other things, this letter contends that WSU did not abide by the "Due Diligence Schedule," which Plaintiff here claims is set forth in 34 C.F.R. §§ 682.411, 682.507 and 20 U.S.C. §§ 1080(d) and 1085(f). (DE 21-1 at 20-25; *see also* DE 1 ¶ 24.) It appears these items were mailed to the USDE on June 6, 2014. (DE 21-1 at 18-19.) On June 9, 2014, Plaintiff wrote a letter to the USDE as an addendum to her request for review of tax offset. (DE 21-1 at 84.)

- By a letter from FSA dated July 9, 2014, Plaintiff was informed that the outstanding balance on her account was $4,725.25 as of July 8, 2014, including $4,305.61 in unpaid principal and $419.64 in accrued interest. Although Plaintiff's complaint contends otherwise, this letter stated, in part: **"Because the former holder of the promissory notes certified a balance due on these loans, *we need specific evidence* from you that this debt has been settled."** (DE 21-1 at 3-4 (emphasis added); *see also* DE 1 ¶¶ 27, 29.)

(DE 21, DE 21-1.)

### 2.     Plaintiff's complaint takes issue with the balance of her student loan account and the collection process.

Plaintiff's complaint contains a section titled, "NATURE OF THE

ACTION." (DE 1 at 3.) In Plaintiff's words:

> This case involves the taking of monies by Defendants from Plaintiff, with express intention to take additional monies, on the basis of an alleged 1997 unpaid student loan debt Defendants advised Plaintiff in the year 2005 WSU discovered may exist. Plaintiff has no unpaid student loan from Defendant WSU.

> The claims at issue are not directed at the validity of federal student loan legislation, but at Defendants' reliance upon it in undertaking actions in violation the Plaintiff's constitutional rights to due process and equal protection in a manner that Congress never intended and that is barred by the Fourteenth Amendment.

(DE 1 ¶¶ 10-11.)

8

Plaintiff sets forth an extensive list of allegations labeled as "facts and legal claims." (DE 1 ¶¶ 12-60.) Among other things, Plaintiff mentions both Perkins loans (*see* DE 1 ¶¶ 14, 25, 27, 30)[3] and emergency loans. (DE 1 ¶¶ 12, 16, 47, 54, 55, 57 and 58.) For example, Plaintiff explains that "[u]pon arrival of the student's financial aid, the emergency loan funds automatically were deducted from financial aid. . . . Plaintiff repaid all emergency loans received under the terms set by WSU law school, and repaid these funds in full by 1997." (DE 1 ¶ 12.) Plaintiff also draws a distinction between WSU's general financial aid department and the law school's financial aid office, explaining that "law school Deans largely administered the emergency loan program for its students in conjunction with its financial aid office." (DE 1 ¶ 55.) According to Plaintiff, these offices consolidated or re-organized following her graduation. (DE 1 ¶ 13.)

Plaintiff claims that Defendant Miles "directed Plaintiff to prove that the emergency loan funds issued from the law school had been repaid[,]" and that Plaintiff "attempted in good faith to do so." (DE 1 ¶ 16.) She claims that for several years, "there existed **no dispute** that the loans had been repaid." (DE 1 ¶ 34 (emphasis in original).) Elsewhere, Plaintiff claims that Defendants "did not respond to exculpatory information from Plaintiff in any way, other than to continue asserting the existence of a debt . . . ." (DE 1 ¶ 22.)

---

[3] The statutes governing Federal Perkins Loans are codified at 20 U.S.C. §§ 1087aa-1087ii.

That Plaintiff's complaint takes issue with the balance of her student loan account and the collection process is buttressed by the description of her cause of action listed in the Civil Cover Sheet: "tax offset and other collection activity of disputed student loan debt[.]" (DE 1 at 14.) At least this much is clear on the face of her pleadings.

### 3.  Plaintiff's complaint against Defendant PCR does not comply with Fed. R. Civ. P. 8(a)(2).

The basis of Defendant PCR's motion to dismiss alleges that Plaintiff has failed to state a claim for relief in accordance with Fed. R. Civ. P. 8(a), specifically Subsection (2). (*See* DE 9 at 3-5.) By way of background, Federal Rule of Civil Procedure 8 governs general rules of pleading. In part, Rule 8 provides, "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

The Court should conclude that Plaintiff's claims against Defendant PCR are unclear. To begin, Defendant PCR is specifically mentioned in only three of the complaint's 61 numbered paragraphs. Plaintiff describes defendant Pioneer Credit Recovery, Inc. (PCR) as "a contractor debt recovery business WSU and the Department identified as its agent in this matter." DE 1 ¶ 8. Plaintiff alleges that PCR "incorrectly indicated that it had provided something Defendant identified as a '65 day notice' on June 1, 2011 on behalf of Defendant Department in

10

connection with this alleged debt, and further indicated that it intends to collect $5361 more from Plaintiff."  DE 1 ¶ 20.  Furthermore, Plaintiff alleges, "WSU, Pioneer and the Department acted despite Miles noncompliance with its obligations under federal law with respect to loan monies and notification to borrowers."  DE 1 ¶ 59.  Thus, while these paragraphs make clear that Plaintiff's claims against PCR concern debt collection, Defendant PCR is left to guess whether Plaintiff's claims against it are based upon:  an alleged violation of a certain provision of the U.S. Constitution, such as the Due Process or Equal Protection Clauses of the Fourteenth Amendment; a federal statute, such as any of the sections of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p; or, a claim for declaratory relief based on equitable principles.[4]  This is so, even though Plaintiff responds that her complaint "states a sufficient basis to find that PCR violated the federal [FDCPA], including the fact PCR committed unfair practices and abusive practices, made false and misleading representations, and committed the failure to validate the debt."  (DE 18 ¶ 4.)  If these are Plaintiff's claims against Defendant PCR, they should be stated in her pleading; however, they are not.

---

[4] For example, Plaintiff alleges that "Defendants in the administrative appeal chose not to address the common laws Plaintiff argues bar their actions, namely estoppel and laches."  (DE 1 ¶ 40.)

11

Plaintiff also responds that PCR "is jointly responsible for the wrongdoings of its codefendants[,]" "[t]ogether with its codefendants, PCR violated its federal due diligence obligations[,]" and "[i]n disregard of the [FDCPA], PCR assisted WSU and Ewing-Miles use and exceed [sic] the authority and power vested in defendants' by Congress in order to wrongfully to [sic] take property of Plaintiff." (DE 18 ¶¶ 6, 7.)  It is true that several of the complaint's paragraphs make plural reference to "Defendants."  However, Defendant PCR is still entitled to know which claims are actually being brought against it.  If, for example, Plaintiff is attempting to allege that PCR was complicit in WSU's alleged violation of its due diligence obligations as set forth in 20 U.S.C. §§ 1080(d) ("Care and diligence required of holders") and 1085(f) ("Due diligence"),[5] then that should be made clear from those paragraphs which mention "due diligence."  (*See* DE 1 ¶¶ 24, 25, 26.)  This is not accomplished by stating, "Plaintiff noted to Defendants that WSU had violated the Federal 'Due Diligence Schedule' the university is obligated to follow in issuing disclosure statements, notices and bills . . . ."  (DE 1 ¶ 24.)

Finally, with respect to the portion of Plaintiff's prayer for relief seeking "[r]eturn of the $4,438 taken from Plaintiff by the Defendants," Plaintiff responds that "[t]he damages asserted are, inter alia, the money already taken by PCR and

---

[5] "The term 'due diligence' requires the utilization by a lender, in the servicing and collection of loans insured under this part, of servicing and collection practices at least as extensive and forceful as those generally practiced by financial institutions for the collection of consumer loans."  20 U.S.C. § 1085(f).

the money it shall continue to collect on behalf [of] its codefendants." (DE 1 at 12 ¶ B, DE 18 ¶ 8.) However, as Defendant PCR points out, the $4,438 in payments – seemingly $250 on April 26, 2012 and $4,188 on July 26, 2012 – offset Plaintiff's debt. In other words, the money went to the USDE and was not kept by PCR. (DE 1 ¶¶ 17-18, DE 9 at 7, DE 21-1 at 4.)

In sum, the Court should agree that Plaintiff's claims against Defendant PCR need to be clarified. Plaintiff is correct that Defendant PCR could have filed a motion for more definite statement of the claims against it, as permitted by Fed. R. Civ. P. 12(e). (DE 18 ¶ 10.) However, Plaintiff also seeks leave to amend under Fed. R. Civ. P. 15(a) if the Court finds merit in the pending motions to dismiss. (DE 18 at 8 ¶¶ 22-24.) Taking Plaintiff's and Defendant PCR's positions into consideration, the Court should deny Defendant PCR's motion (DE 9) without prejudice and permit Plaintiff to file an amended complaint which complies with Fed. R. Civ. P. 8(a)(2).

### 4. Plaintiff's complaint against Defendants WSU and Ewing-Miles is also in need of clarification.

Defendants WSU and Ewing-Miles argue that Plaintiff has failed to state a claim of denial of equal protection or due process. (DE 11 at 7-8, 9-10.) Plaintiff's September 21, 2015 response does not address the issue of equal protection. Moreover, among Plaintiff's response's references to "due process" is the statement that "due process violations are not the only claims raised." (DE 18

13

¶¶ 15, 19, 20.)  Thus, there is a fundamental problem with Plaintiff's complaint, namely, the uncertainty of which claims Plaintiff is alleging against Defendants WSU and Ewing-Miles.  This includes the need for clarification of whether Plaintiff's claims against Defendants WSU and Ewing-Miles are based upon an alleged violation of a certain provision of the Constitution, a federal statute, common law and/or equitable theories.

For example, on the constitutional front, with reference to "Defendants," Plaintiff vaguely alleges a "violation [of her] constitutional rights to due process and equal protection in a manner that Congress never intended and that is barred by the Fourteenth Amendment."  (DE 1 ¶ 11.)  The only other mention of "due process" and "equal protection" occurs in the following allegation:  "Defendants['] determinations concerning its rights and duties affords no *due process* for the rights of individuals challenging their actions, materially affecting the rights of individual student borrow[er]s and working substantial injustice, depriving *student borrowers* of *equal protection* of the laws."  (DE 1 ¶ 41 (emphasis added).)  These paragraphs do not make clear against which defendants these constitutional claims are asserted; nor do they clarify the factual basis for these claims.  Further, the Plaintiff makes an unspecified allegation that the USDE's administrative process is somehow "biased and prejudiced in favor of Defendants."  (*See* DE 1 ¶ 38.) Finally, the Court is left to assume that other non-specific references to "in a

manner not sanctioned by the Constitution" or "constitutionally unfair" are limited to Fourteenth Amendment due process challenges.  (*See* DE 1 ¶¶ 33, 49.)[6] Therefore, the constitutional basis or bases of Plaintiff's claims against Defendants WSU and Ewing-Miles must be clarified.

Likewise, Plaintiff's federal law claims against these defendants, if any, need clarification.  Plaintiff's references to "federal laws" and "federal law" do not inform the Court which federal law was violated (*see* DE 1 ¶¶ 45, 59), leaving the Court to assume Plaintiff's federal statutory claims may possibly arise under one of the many sections of the FDCPA or one of the many federal statutes governing student assistance, such as those concerning Federal Perkins Loans, 20 U.S.C. §§ 1087aa-1087ii.

Plaintiff does seem to allege that Defendant WSU violated the due diligence requirements of 20 U.S.C. §§ 1080(d) and 1085(f), a subject Plaintiff mentioned in her June 5, 2014 letter to the USDE.  (DE 1 ¶ 24, DE 21-1 at 20-25.)  In addition, Plaintiff alleges that "Defendants violated the Federal Administrative Procedures Act in addressing Plaintiffs' [sic] efforts to challenge the debt and the tax offset." (DE 1 ¶ 50.)  Also, Plaintiff's Civil Cover Sheet lists 20 U.S.C. § 1091, *et al.*,

---

[6] Several paragraphs of the complaint suggest to the Court that Plaintiff intends to bring at least a procedural due process claim against Defendants based upon the allegations regarding forum, evidence and access to records.  Yet, it is not clear whether these claims apply only to the university defendants.  (S*ee*, *i.e.*, DE 1 ¶¶ 43, 44, 47, 56, 57, 58.)

which concern student assistance, as the statute(s) under which she is filing.  (DE 1 at 14 (Civil Cover Sheet).)  However, it remains that Plaintiff's federal law claims, if any, against Defendants WSU and Ewing-Miles should be clarified.  For example, if Plaintiff is challenging the timing or content of an alleged September 2005 notice from Defendant WSU (DE 1 ¶ 14), or the existence of an alleged June 1, 2011 notice by Defendant PCR (DE 1 ¶ 20), or WSU's compliance with the notice or other provisions of 20 U.S.C. §§ 1080(d) and 1085(f) (DE 1 ¶ 24) or any defendant's alleged violation of 20 U.S.C. §§ 1091, *et seq*. (DE 1 at 14), the statutory basis of Plaintiff's claims and the Defendants against whom such claims are brought should be made clear.  This is not accomplished by Plaintiff's statement in response that "[a]s the complaint indicates, plaintiff did not receive from defendants the notice mandated by federal statute and regulations."  (DE 18 ¶ 17.)  Nor is it accomplished by the explanation that "[b]ut for defendants' failures to comply with their obligations under federal law, plaintiff was unable to document the fact there was no loan debt as the emergency loans each had been repaid in full within several months after disbursement of the funds, as Law School policy required."  (DE 18 ¶ 18.)  If Plaintiff intends to claim that Defendant WSU or any other defendant is not adequately keeping school loan payment records, then the legal or statutory basis of that claim, as well as the defendant against whom the claim is brought, should be made clear.

16

Plaintiff's several references to "common law" are also in need of clarification. (*See* DE 1 ¶¶ 30, 33, 38, 40.) The references to unspecified "Defendant's" and "Defendants" and "Defendants'" leaves the Court guessing against which Defendants Plaintiff brings common law claims. Moreover, the common law theories are unclear. To be sure, Plaintiff does directly reference the theories of estoppel and laches, but these are usually defensive equitable theories, not affirmative causes of action. (DE 1 ¶ 40.) Additionally, if Plaintiff intended to bring claims for fraud or negligence, the only related allegations seem to be that "Defendants" operate "in a manner highly susceptible to fraud or neglectful management of records . . . ." and that "[d]efendants engaged in false, deceptive, and misleading representation or means in connection with the collection of the alleged debt[,]" and "fail to maintain procedures reasonably adapted to avoid errors that lead to false claims that students who graduated years earlier suddenly have been determined to owe loan funds to the school." (DE 1 ¶¶ 42, 46, 51). As noted above, it should be clear which common law claims are brought against which Defendants, <u>and the particularity requirements contained in Fed. R. Civ. P. 9(b) must be met</u>.

Accordingly, at this time, rather than assess whether Plaintiff has stated due process and equal protection claims against Defendants WSU and Ewing-Miles, it would more prudent to first require Plaintiff to file an amended compliant which

clarifies the types of claims she is bringing against Defendant WSU and the types of claims she is bringing against Defendant Ewing-Miles, pleaded in distinct and *separate counts* for each cause of action alleged and identifying which Defendants are included in each count. Once that occurs, it will be more judicially efficient for the Court to assess whether Plaintiff has stated claims against these defendants upon which relief may be granted as a matter of law.

Furthermore, it will not suffice for Plaintiff to allege that Defendant Miles acted "in her personal and official capacities . . . ." (DE 1 ¶ 56.) She must plead facts which differentiate between the two. It will likewise not suffice to sweepingly allege violations of constitutional, statutory, regulatory or common law without identifying the specific law violated, the manner in which it was violated, and the parties who violated it.[7]

### E.   Conclusion

On balance, the Court should deny without prejudice the pending motions to dismiss (DEs 9, 11) and permit Plaintiff an opportunity to amend her complaint by a date certain, in accordance with the above analysis. In so doing, Plaintiff should be reminded that any amended complaint **(a)** will supercede her originally filed complaint, **(b)** must comply with the Federal Rules of Civil Procedure, especially

---

[7] Plaintiff will also need to plead facts, and not mere legal conclusions, in support of any claims that PCR "is jointly responsible for the wrongdoings of its codefendants[,]" and that it "violated its federal due diligence obligations[,]" should she choose to continue her action against that defendant. (DE 18 ¶¶ 6, 7.)

18

those related to pleadings (*see*, *i.e.*, Fed. Rules Civ. P. 8 ("General Rules of Pleading."), 9 ("Pleading Special Matters."), 10 ("Form of Pleadings."), 11 ("Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions.") and 15 ("Amended and Supplemental Pleadings."); and **(c)** may be subjected to a motion to dismiss by any of the five defendants, at which time the Court may consider whether she has stated claims upon which relief may be granted as to any party moving for dismissal (*see, i.e.,* Fed. R. Civ. P. 12(b)(6), *Bell Atlantic Corp. v. Twombly*, 550 US. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 8, 2016          s/ Anthony P. Patti
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 8, 2016, electronically and/or by U.S. Mail.

                                s/Michael Williams
                                Case Manager for the
                                Honorable Anthony P. Patti
                                (313) 234-5200

20