UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON DENISE JONES,

            Plaintiff,                 Case No. 2:15-cv-10171
                                              Judge David M. Lawson
v.                                  Magistrate Judge Anthony P. Patti

U.S. DEPARTMENT OF
EDUCATION, et al.,

            Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING
WSU AND EWING-MILES'S MOTION TO DISMISS (DE 30), USDE AND
DUNCAN'S MOTION FOR SUMMARY JUDGMENT (DE 41) and PCR'S
MOTION TO DISMISS (DE 43)**

**I.**    <u>**RECOMMENDATION:**</u> The Court should **(a)** grant Defendants WSU and
Ewing-Miles's March 4, 2016 motion to dismiss (DE 30), **(b)** grant Defendants
USDE and Duncan's April 20, 2016 motion for summary judgment (DE 41) and
**(c)** grant Defendant PCR's April 25, 2016 motion to dismiss (DE 43).

**II.**    <u>**REPORT:**</u>

     **A.**    **Procedural Background**

     This case concerns allegedly wrongful student loan collection efforts.
Sharon Denise Jones filed her January 15, 2015 complaint against five defendants:
the United States Department of Education (USDE); Arne Duncan, Secretary of
the USDE; Wayne State University (WSU); Pioneer Credit Recovery, Inc. (PCR);

and April Ewing-Miles, "a loan manager at WSU . . . ." (DE 1 ¶¶ 5-9.)  She describes her complaint as concerning "the unconstitutional and discriminatory taking of property . . . ." (DE 1 at 1.)  Plaintiff seeks injunctive relief, refund of all moneys collected and compensation for all harm caused, as well as any other relief that the Court deems just and proper. (DE 1 at 12 ¶¶ A-C.)

Following the entry of a report and recommendation on certain dispositive motions, the Court entered an order denying without prejudice Defendants' respective motions to dismiss. (*See* DEs 9, 11, 24 and 25).  The order further provided that "if the plaintiff desires to file an amended complaint, then she must do so **on or before February 9, 2016**." (DE 25 at 2 (emphasis in original).)

Having been granted an extension of time, Plaintiff timely filed her amended complaint on February 19, 2016. (DE 28; *see also* DE 26.)  Among other things, the amended complaint contains an extended description of the "nature of the action and legal claims," which includes alleged violations of the Fair Debt Collection Practices Act (FDCPA) by Defendant PCR. (DE 28 ¶¶ 10-42.)[1]

### B.    Instant Matters

---

[1] To date, Defendants USDE, Duncan and PCR have filed answers to the amended complaint. (DE 29, 33.)  Moreover, Defendants WSU and Ewing-Miles promptly filed a motion to dismiss Plaintiff's amended complaint. (DE 30.)  Such a motion is a proper vehicle by which to assert the defense of "failure to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6), even it is not a Fed. R. Civ. P. 7(a) responsive "pleading."  Thus, Plaintiff is incorrect in her assertion that "[t]he nonfederal actors never answered [her] complaint." (DE 46 ¶ 21.)

Judge Lawson has referred this case to me for all pretrial matters.  (DE 4.)
Currently before the Court are three dispositive motions:  **(1)** Defendants WSU and
Ewing-Miles's March 4, 2016 motion to dismiss Plaintiff's amended complaint
(DE 30); **(2)** Defendants USDE and Duncan's April 20, 2016 motion for summary
judgment (DE 41); and (3) Defendant PCR's April 25, 2016 motion to dismiss (DE
43).[2]

### C.    Dispositive Motion Practice

### 1.    Fed. R. Civ. P. 12(b)(6)

Defendants WSU, Ewing-Miles and PCR bring their motions to dismiss
pursuant to Fed. R. Civ. P. 12(b)(6).  (DE 30 at 7, DE 43 at 1, 7.)  When deciding a
motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must
"construe the complaint in the light most favorable to plaintiff and accept all
allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To

---

[2] On March 14, 2016, in the midst of the above-described dispositive motion
practice, I conducted a telephonic status conference with Plaintiff and defense
counsel.  Thereafter, I entered an order which, among other things, set a deadline
for the Plaintiff to inform the Court as to whether she is challenging the
completeness of the administrative record filed with this Court on October 6, 2015
(DE 21).  (DE 34 at 2.)  On March 21, 2016, Plaintiff filed a "statement
challenging completeness of administrative record,"  wherein she argued that
"[d]iscovery is necessary in order to respond to the defendants' anticipated
motions for summary judgment on the basis of the administrative record[,]" and
requesting that the Court order Defendants to produce and provide certain items.
(DE 35.)  On March 31, 2016, I entered an order stating, in part:  "the Court is not
convinced that discovery regarding the administrative record is necessary at this
time."  (DE 36.)

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").   Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

### 2.   Pro se Pleadings and Plaintiff's Status as a Licensed Attorney

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, as Defendant PCR correctly notes, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct

4

the plaintiff's legal arguments for [her]," and "[n]either may the court 'conjure up unpled allegations,' . . . ." *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.) (citations omitted).

Plaintiff filed her complaint *in pro per* and is proceeding *in forma pauperis*. (*See* DE 1 at 12, DEs 2, 3, 4 & 5.)  However, noting the references in Plaintiff's amended complaint to her attendance at WSU's law school (*see* DE 28 ¶¶ 43, 44, 47, 86, 87) and the admission in her response brief that she "practices in the state courts of Michigan[,]" (DE 46 at 8 ¶ 20), the Court takes judicial notice that Plaintiff is attorney Sharon D. Jones (P57113).  (*See* www.michbar.gov, "Member Directory.")  Although representing herself, because Plaintiff is a licensed Michigan attorney, she is not entitled to the liberal construction generally afforded to the pleadings of *pro se* Plaintiffs, notwithstanding her assertion that she "does not practice in [the] federal court system[,]" (DE 46 ¶ 20).  *Underhill v. Royer*, No. 14-cv-14768, 2015 WL 2384052, *2 n.3 (E.D. Mich. May 19, 2015), *aff'd* (May 12, 2016); *see also Sabeti v. Maron*, No. 12-CV-2392 JS ARL, 2012 WL 2001717, at *2 (E.D.N.Y. June 4, 2012).  Michigan state courts require notice pleading, just as do federal courts.  *Johnson v. QFD, Inc.*, 292 Mich. App. 359, 368, 807 N.W.2d 719, 726 (2011); *see also* M.C.R. 2.111(A)(1) ("Each allegation of a pleading must be clear, concise, and direct.").  Thus, there is no appreciable difference in how to

plead an adequate complaint.  Plaintiff has had two opportunities to plead her case clearly and concisely and in a "short and plain statement of the claim[s] showing that [she] is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  In permitting her to amend her complaint, the Court pointed out to her that her original complaint against Defendants did not comply with this rule.  (DE 24 at 10-18.)

Moreover, despite the unsupported assertion in her response brief that "[i]n recent months" she "suffered serious injuries including a concussion and brain injury . . .[,]" (DE 46 at 8 ¶ 20), her amended complaint – the sufficiency of which is at issue here – was filed nearly one year ago.  To this Court's knowledge, Plaintiff has not co-counseled with another attorney, had counsel appear for her, sought the appointment of counsel or given any indication that her purported disability requires a guardian, conservator, next friend, guardian *ad litem*, or other accommodation.  She has responded to the pending motions on her own behalf. (DE 46.)  Nevertheless, I have endeavored to take as expansive a view of her pleadings  as can be justified within their four corners and have considered the arguments in the light most favorable to her.

### 3.     Fed. R. Civ. P. 56

Defendants USDE and Duncan bring their motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (DE 41 at 6.)  Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is

7

some metaphysical doubt as to the material facts . . . .   [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations

omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving

party is merely colorable or is not significantly probative.  *City Management Corp.*

*v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words,

summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ."  *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

## D.    Factual Background (1993-2010)

### 1.    Introduction

During 1993 and 1996, while Plaintiff was attending WSU, she executed

Federal Perkins Loan Program Promissory Notes totaling $6,500 and was,

additionally, the recipient of certain "emergency loan" funds.  (DE 21-1 at 41-45,

68-72; DE 28 ¶¶ 4, 43.)  According to Plaintiff, the "emergency loan" funds were

repaid in full by 1997.  (DE 28 ¶ 43.)  Plaintiff's enrollment at WSU ended on May

1, 1997, and a 90-day grace notice issued on July 31, 1997.  Several years later

other grace notices were issued and additional grace periods were given, including:

8

a grace period beginning on January 1, 2005; a 90-day grace notice issuing on

March 31, 2005; a 150-day grace notice issuing on May 31, 2005; a 240-day grade

notice issuing on August 31, 2005; a past-due notice issuing on February 8, 2007;

and an acceleration letter issuing on February 28, 2007. (DE 28 ¶ 57; DE 21-1 at

52-59.)[3]  Somewhat at odds with these dates is Plaintiff's allegation that it was not

until September 15, 2005 – approximately eight years following her 1997

graduation - that she received a notice from Defendant WSU that the nine-month

grace period on her Federal Perkins Loans had expired and that she needed to

being repaying her loans on November 1, 2005. (DE 28 ¶¶ 10, 43, 45.)  She

contacted Defendants WSU and/or Ewing-Miles, apparently during September

2005, and attempted "in good faith" to prove that the "emergency loan" funds had

been repaid. (DE 28 ¶¶ 46-47; DE 21-1 at 50-51.)  Plaintiff contends that she "did

not and does not owe loan money to WSU," and, prior to September 2005, "there

had been no claim by WSU or any of its loan managers . . . that [she] owed money

to WSU." (DE 28 ¶ 51.)  In other words, Plaintiff alleges that "[n]o monies [she]

borrowed from Defendant WSU ever had been declared in default prior to its

assignment to the USDE[,]" and these defendants assigned her claim to the USDE

in 2010 – thirteen years after she graduated. (DE 28 ¶¶ 60, 66.)

### 2.    Timeline derived from the administrative record

---

[3] These dates are listed on inquiries from ACS – a company which Plaintiff claims performed due diligence procedures. (DE 28 ¶ 57; DE 21-1 at 52-59.)

On October 6, 2015, the government defendants filed a copy of the administrative record.  (DE 21, DE 21-1.)  "The Court may consider public records and other facts capable of being judicially noticed without converting a motion to dismiss to one for summary judgment."  *ASF3, Inc. v. United States*, No. 14-13444, 2015 WL 5697681, at *1 n.1 (E.D. Mich. Sept. 29, 2015) (citing *New England Health Care Employee Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).  Also, "[t]he Court may take judicial notice of an administrative record without converting a motion into one for summary judgment."  *Id.* (quotation and citation omitted).

Plaintiff attended WSU from approximately 1993 through 1997.  (DE 28 ¶ 4.)  With the benefit of the administrative record, the Court is able to discern the following timeline:

- On September 19, 1993, Plaintiff, then Sharon D. Brookins, received a $1,000 Federal Perkins Loan.  (DE 21-1 at 42, 69.)

- On January 26, 1994, Plaintiff received a $1,000 Federal Perkins Loan.  (DE 21-1 at 41, 62, 68.)

- On August 4, 1995, Plaintiff completed a Perkins Loan Data Sheet.  (DE 21-1 at 65.)

- On November 13, 1995, Plaintiff received a $1,000 Federal Perkins Loan. (DE 21-1 at 43, 70.)

- On January 10, 1996, Plaintiff received a $1,000 Federal Perkins Loan.  (DE 21-1 at 44, 71.)

- On August 20, 1996, Plaintiff executed a Federal Perkins Loan Promissory Note in the amount of $2,500.  (DE 21-1 at 45, 72.)

Plaintiff graduated from WSU in 1997.  She claims that she "repaid *all emergency loans* received under the terms set by WSU law school, and repaid *these funds* in full by 1997."  (DE 28 ¶ 43 (emphases added).)[4]  Still, the administrative record evidences continuing efforts to collect:

- In August 2005, it was determined that Plaintiff's address was 111 E. Kirby St., Apt. 23, Detroit, MI 48202-4003.  (DE 21-1 at 64.)

- On September 14, 2005, Plaintiff electronically mailed April Opheli Ewing-Miles regarding a Perkins Loan repayment notice she received.  (DE 21-1 at 50; *see also* DE 28 ¶¶ 45-46.)

- By a letter dated October 13, 2005, WSU Loan Manager April Ewing-Miles wrote to Plaintiff, apparently now Sharon Brookins-Jones, explaining, among other things, that "correspondences ceased until recently when a new address was found."  (DE 21-1 at 51.)

- Based upon a Federal Perkins Loan Program/NDSL Assignment Form, it appears that Plaintiff's loan was in default on November 2, 2005, and, on February 28, 2007, it was accelerated.[5]  At that point, the total amount outstanding appears to have been $8,153.88, or $6,500 in principal amount loaned and $1,651.88 in interest due.  (DE 21-1 at 38-40; *see also* DE 21-1 at 52.)

---

[4] On August 11, 1998, Plaintiff filed a Chapter 7 voluntary bankruptcy petition. An order discharging debtor was entered on November 12, 1998, but the case was reopened on February 28, 2003.  It is not clear whether Plaintiff listed the student loan debt at issue in this case in her initial or amended bankruptcy schedules, but, in any case, such debt would be non-dischargeable, as discussed infra.  (*See Sharon Denise Brookins*, Case No. 98-54090 (Bankr. E.D. Mich.); DE 21-1 at 67.)

[5] Meanwhile, it appears that there was a January 19, 2007 notice request regarding Form 1098-E (Student Loan Interest Statement).  (DE 21-1 at 5; *see also* https://www.irs.gov/pub/irs-pdf/f1098e.pdf.)

11

- On February 7, 2006, a final decree was entered in Plaintiff's bankruptcy case.  (*See* Case No. 98-54090 (Bankr. E.D. Mich.); DE 21-1 at 67.)

- By a letter dated February 6, 2007, Ewing-Miles wrote to Plaintiff, citing the Bankruptcy Reform Acts of 1979 & 1984 and section 971 of the Higher Education Amendment of 1998 and explaining that her outstanding tuition/loans balance did not meet the criteria for discharge.  (DE 21-1 at 66.)

- A database listing WSU as a client indicates that Plaintiff's address was updated on March 8, 2007.  It further indicates that Plaintiff sent a cease & desist letter, which was received on March 19, 2007.  (DE 21-1 at 73-77.)

- By a letter to WSU / Ewing-Miles dated August 13, 2009, Williams & Fudge, Inc., acknowledged receipt of accounts for collection totaling $10,846.75 ($6,500 in balance, $1,245.68 in interest, $2 in "other," and $3,099.07 in collection charges).  (DE 21-1 at 78.)

- On October 9, 2009, Plaintiff wrote to Williams & Fudge, Inc., stating, among other things, that she did not owe their client WSU "any money whatsoever."  (DE 21-1 at 60-61.)

- It seems that Plaintiff's debt was transferred to the USDE on or about November 16, 2010.  (DE 21-1 at 33, 52; *see also* DE 28 ¶¶ 7, 30.)  At the time of the assignment from WSU to the USDE, the claimed balance was $6,500 in unpaid principal, $1,651.88 in accrued interest, and $2.00 in fees. (DE 21-1 at 27.)

- By a letter dated May 17, 2011, Plaintiff was informed that the USDE had assigned her account to PCR for collection.  At that time, the alleged balance was $10,307.55, comprised of $6,500 in principal, $1,789.81 in interest and $2,017.74 in fees and costs.  (DE 21-1 at 32.)

- The USDE's June 1, 2011 debt statement, which was apparently mailed to Plaintiff at her Eastpointe, Michigan address, indicated that $1,729.50 had been paid to the USDE, but also that a total of $8,302.27 ($6,500 in current principal and $1,802.27 in current accrued interest) was eligible for offset by the date of the debt statement.  (DE 21-1 at 33.)

- By a letter dated August 20, 2011, USDE Federal Student Aid (FSA) informed Plaintiff, among other things:  "**You state that this debt has been paid in full.  Because the former holder of the promissory notes certified a balance due on these loans,** *we need specific evidence* **from you that this debt has been settled.**"  The letter also informed Plaintiff that the balance on her account was $10,412.75, including $6,500 in unpaid principal and $1,874.42 in accrued interest.  Plaintiff was further informed that collection costs were projected to total $2,038.33.  (DE 21-1 at 26-28 (emphasis added); *see also* DE 28 ¶¶ 28-30.)

- On September 22, 2011, Plaintiff e-mailed Dean Sharon Morey Brown, who responded that she had been away from the law school for more than 10 years and did not provide specific evidence about Plaintiff's school loan balance.  (DE 21-1 at 29-30.)

It seems that 2012 passed without any correspondence of record.  However, it does appear that the USDE received Plaintiff's first payment on April 26, 2012, in the amount of $250.00, by way of a tax offset and that the USDE received a $4,188 offset payment on July 26, 2012.  (DE 21-1 at 4; DE 28 ¶¶ 48-50.)

Then, in 2013 – shortly after what appears to have been a January 6, 2013 notice request regarding Form 1098-E (Student Loan Interest Statement),[6] correspondence of record resumed:

- On January 14, 2013, Plaintiff wrote to WSU's Office of General Counsel seeking records regarding her Perkins loan(s).  (DE 21-1 at 34-36.)

- A February 11, 2013 account inquiry seems to confirm the above-mentioned total balance of $8,153.88 at the time of the assignment from WSU to the USDE.  (DE 21-1 at 52-59.)

---

[6] (*See* DE 21-1 at 5; *see also* https://www.irs.gov/pub/irs-pdf/f1098e.pdf.)

- By a letter dated March 5, 2013, WSU's Assistant General Counsel responded to Plaintiff's January 14, 2013 FOIA request.  (DE 21-1 at 37.)

- On June 4, 2014, Plaintiff completed a request for review.  (DE 21-1 at 16-17.)  She also attached a letter in support, dated June 5, 2014.  Among other things, this letter contends that WSU did not abide by the "Due Diligence Schedule," which Plaintiff here claims is set forth in 34 C.F.R. §§ 682.411, 682.507 and 20 U.S.C. §§ 1080(d) and 1085(f).  (DE 21-1 at 20-25; *see also* DE 28 ¶ 56.)  It appears these items were mailed to the USDE on June 6, 2014.  (DE 21-1 at 18-19.)  On June 9, 2014, Plaintiff wrote a letter to the USDE as an addendum to her request for review of tax offset.   (DE 21-1 at 84.)

- By a letter from USDE FSA dated July 9, 2014, Plaintiff was informed that the outstanding balance on her account was $4,725.25 as of July 8, 2014, including $4,305.61 in unpaid principal and $419.64 in accrued interest.  Although Plaintiff's amended complaint contends otherwise, this letter stated, in part:  **"Because the former holder of the promissory notes certified a balance due on these loans, *we need specific evidence* from you that this debt has been settled."**  (DE 21-1 at 3-4 (emphasis added).)

(DE 21, DE 21-1.)

### E.    Analysis

#### 1.    Plaintiff's amended complaint takes issue with the balance of her student loan account and the collection process.

Plaintiff's amended complaint contains a section titled, "NATURE OF THE ACTION AND LEGAL CLAIMS."  (DE 28 ¶¶ 10-42.)  In Plaintiff's words:

> This case involves the taking of monies by Defendants from Plaintiff, with express intention to take additional monies, due to the allegation a 1997 unpaid student loan debt Defendants advised Plaintiff in the year 2005 WSU discovered may exist.

> Plaintiff has no unpaid student loan from Defendant WSU.

> The claims at issue are not directed at the validity of federal student loan legislation, but at Defendants' reliance upon it to justify undertaking the actions at issue in this matter.

(DE 28 ¶¶ 10-12.)

Plaintiff's causes of action appear to have various federal and state law bases:  Fourteenth Amendment; conversion; fraud; the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws §§ 445.901-445.922; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p; 31 U.S.C. § 3720A ("Reduction of tax refund by amount of debt"); and the Federal Family Education Loan Program (FFELP), 20 U.S.C. §§ 1071-1087-4.  (DE 28 ¶¶ 14-42.)

Plaintiff sets forth an extensive list of allegations labeled as "FACTS."  (DE 28 ¶¶ 43-92.)  Among other things, Plaintiff mentions both Perkins loans (*see* DE 28 ¶¶ 45, 57, 59, 61)[7] and emergency loans (*see* DE 28 ¶¶ 43, 47, 78, 86, 87, 89, 90).  For example, Plaintiff explains that "[u]pon arrival of the student's financial aid, the emergency loan funds automatically were deducted from financial aid. . . . Plaintiff repaid all emergency loans received under the terms set by WSU law school, and repaid these funds in full by 1997."  (DE 28 ¶ 43.)  Plaintiff also draws a distinction between WSU's general financial aid department and the law school's financial aid office, explaining that "law school Deans largely administered the emergency loan program for its students in conjunction with its financial aid

---

[7] Within the FFELP, the statutes governing Federal Perkins Loans are codified at 20 U.S.C. §§ 1087aa-1087ii.

office." (DE 28 ¶ 87.) According to Plaintiff, these offices consolidated or re-organized following her graduation. (DE 28 ¶ 44.)

Plaintiff claims that Defendant Miles "directed Plaintiff to prove that the emergency loan funds issued from the law school had been repaid[,]" and that Plaintiff "attempted in good faith to do so." (DE 28 ¶ 47.) She claims that for several years, "there existed no dispute that the loans had been repaid." (DE 28 ¶ 65.) Elsewhere, Plaintiff claims that Defendants "did not respond to exculpatory information from Plaintiff in any way, other than to continue asserting the existence of a debt . . . ." (DE 28 ¶ 54.)

At least this much is clear on the face of her pleadings.

### 2.    Defendants WSU and Ewing-Miles are entitled to dismissal of Plaintiff's various claim(s) against them.

Plaintiff sues Defendants WSU and Ewing-Miles in their roles as a "public Michigan school of higher education . . ." and a WSU "loan manager," respectively. (DE 28 ¶¶ 7, 9.) Despite being afforded the opportunity to amend her pleadings in this Court's prior consideration of dismissal motions, Plaintiff's causes of action against these defendants remain less than clear. For example, Plaintiff's amended complaint still makes very general references to "federal law." (*See, i.e.*, DE 28 ¶¶ 14, 76, 91.)[8] Moreover, it generally refers to "common law"[9]

---

[8] The Court assumes that Plaintiff only intended her MCPA claim to be brought against Defendant Pioneer. (*See* DE 28 ¶¶ 14, 34.) This claim is addressed below.

and also mentions conversion and fraud. (DE 28 ¶¶ 14, 64.)[10] To be sure, Plaintiff

specifically states that Defendants WSU and Miles were among those who violated

---

[9] Plaintiff also points out the August 20, 2011 letter's reliance on "common law," and the administrative appeal process' failure to address her common law arguments, such as estoppel and laches. (*See* DE 28 ¶¶ 61, 69, 71.) However, as I pointed out in my previous report, estoppel and laches are usually defensive equitable theories, not affirmative causes of action. (*See* DE 24 at 17.) Moreover, not only do these allegations appear to concern matters post-dating the 2010 assignment or transfer of the loan to Defendant USDE, but also the Court suspects Plaintiff's use of these terms refers to her apparent defensive argument that Defendants should be estopped from collecting on her loan on the basis that Defendants WSU and/or Ewing-Miles were tardy with the submission of Plaintiff's loan for assignment or transfer.

[10] Plaintiff's amended complaint does make other use of the word "**fraud**," in various forms, and also makes use of the phrase, "false, deceptive, and misleading representation or means . . . ." (*See* DE 28 ¶¶ 15, 35, 39, 73, 77.) However, to the extent Plaintiff intended a separate cause of action based upon "fraud," the allegations that Defendants WSU and Miles "fraudulently secured color of federal authority to carry out an illegal exaction of plaintiff's tax refund by means of an offset[,]" (DE 28 ¶ 15), or that these defendants "misstated dates and other information in order to improperly obtain insurance coverage and fraudulently persuade the [USDE] to accept assignment of its defective default claim[,]" (DE 28 ¶ 39), do not satisfy the requirement that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This is not cured by Plaintiff's June 10, 2015 equally vague contention that Defendants WSU and Ewing-Miles made fraudulent affirmations, including "intentionally stating incorrect dates," which "secured the assignment and offsets." (DE 46 at 2.) Furthermore, any **conversion** claims against these and other defendants would fail – even if clearly alleged – because they would not relate to specific money entrusted to the defendants' care. Money is a subject of conversion only when it is capable of being specifically identified, as in a bailment of cash or coins. *Garras v. Belkiares*, 315 Mich. 141, 23 N.W.2d 239 (1946); *see also, Echelon Homes, LLC v Carter Lumber Co*, 261 Mich. App. 424, 683 N.W.2d 171 (2004), *rev'd on other grounds*, 472 Mich. 192, 694 N.W.2d 544 (2005) (employee who admitted to embezzling funds from employer may be liable for

31 U.S.C. § 3720A(a).  (DE 28 ¶ 15.)  However, the two tax offsets at issue in this case occurred during 2012, a date after 2009 – when WSU and/or Miles reported an outstanding principal balance of $6,500 to a collection agent (*see* DE 21-1 at 60-61, 78), apparently washing their hands of any involvement in the collection of Plaintiff's student loan balances - and a date after 2010 – when the loan was reassigned or transferred to Defendant USDE (DE 21-1 at 27, 33, 52).  Therefore, Plaintiff does not seem to be alleging that Defendants WSU and Miles participated in the offset.

### a.      Federal statutory claims

Instead, based upon Plaintiff's other specific references to Defendants WSU and Ewing-Miles within the "nature of the action and legal claims" portion of her amended complaint, the Court assumes Plaintiff's federal statutory claims against these defendants are based upon alleged violations of the statutes and/or regulations governing:  **(i)** the **Federal Family Education Loan Program (FFELP)** (20 U.S.C. §§ 1071-1087-4, 34 C.F.R. Part 682) – specifically 20 U.S.C.

---

restitution but is not obligated to return the "specific or identical moneys" taken from employer's account with supplier).  Here, Plaintiff has not even alleged the bare-bones elements of conversion, *i.e.*, any distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with, his or her rights therein.  *Thoma v Tracy Motor Sales, Inc*, 360 Mich. 434, 104 N.W.2d 360 (1960).

§ 1080(d) ("Care and diligence required of holders"),[11] 34 C.F.R. § 682.411

("Lender due diligence in collecting guaranty agency loans.") and 34 C.F.R. §

682.205 ("Disclosure requirements for lenders.");[12] and **(ii) Federal Perkins**

**Loans** (20 U.S.C. §§ 1087aa-1087ii, 34 C.F.R. Part 674).  (*See* DE 28 ¶¶ 17, 18,

19, 29, 31, 35, 38, 39, 40.)  As summarized by Plaintiff:

> The gravamen of this claim turns on the failure of WSU and Miles to
> comply with federal due diligence obligations for the federal Perkins
> loans it purports Plaintiff failed to repay, followed by their intentional
> misrepresentation to federal authorities that compliance had occurred.

(DE 28 ¶ 18.)[13]

---

[11] Plaintiff's complaint also mentions 20 U.S.C. § 1085(f) (DE 28 ¶ 56), but this statute merely *defines the term* "due diligence" as follows:  "The term 'due diligence' requires the utilization by a lender, in the servicing and collection of loans insured under this part, of servicing and collection practices at least as extensive and forceful as those generally practiced by financial institutions for the collection of consumer loans."  20 U.S.C. § 1085(f).

[12] Plaintiff's amended complaint also refers to 34 C.F.R. § 682.507; however, this section of the regulations is currently designated as "reserved."  Instead, the Court assumes Plaintiff intends to rely solely upon 34 C.F.R. § 682.205.  (*See* DE 28 ¶¶ 19, 56, 57.)

[13] As explained in further detail below, Plaintiff has not provided any evidence within her control that she repaid her *Federal Perkins Loans* – such as copies of cancelled checks, personal account statements, etc.  Thus, her claim of "misrepresentation" or "misstated" information appears to be based upon equating repayment of "emergency loan" funds with repayment of her Federal Perkins Loans.  (DE 28 ¶¶ 18, 31, 39.)  Accordingly, this report does not address Plaintiff's claims that Defendant Miles was or should have been aware of the law school's "emergency loan" funds program.  (DE 28 ¶¶ 86-87.)  Moreover, the allegation that Defendant Miles's actions deprived Plaintiff "of an opportunity to address

As for her causes of action, Plaintiff specifically alleges that, whenever
Defendants WSU and Ewing-Miles declared her loan in default – which the
administrative record indicates occurred in November 2005, "it would have been
more than eight years beyond the federal due diligence deadlines for doing so."
(DE 28 ¶ 29; DE 21-1 at 38-39, 52-54.)  In other words, it was too late.  Then, after
referencing the 2010 assignment or transfer of her loan to Defendant USDE,
Plaintiff alleges that Defendants WSU and Ewing-Miles "misrepresented the dollar
amounts that would have been due in excess of the principal of the loans," because
doing so "was necessary in order [to] create the appearance due diligence
compliance occurred[,]" and "misstated dates and other information in order to
improperly obtain insurance coverage and fraudulently persuade the [USDE] to
accept assignment of its defective default claim."  (DE 28 ¶¶ 30-31, 39.)[14]

---

[her] allegations with evidence sufficient to dispute it[,]" (*see* DE 28 ¶ 88), is, on
its own, conclusory.

[14] Plaintiff claims that Defendants PCR and WSU gave her "circular instructions"
regarding "how to challenge the claim of a debt," which resulted in Plaintiff having
had "no recourse at any point in time after Miles alleged a debt[,]" and generally
alleges that "defendants" would always refer her "to address this matter to other
WSU entities, who in turn only would direct Plaintiff to address the matter with
other WSU agencies or affiliates."  (DE 28 ¶¶ 38, 79.)  In other words, she alleges
she was given the run-around.  These allegations are without detail.  Moreover, the
administrative record contains three examples of letters to Plaintiff from WSU
and/or Ewing-Miles:  (1) Ewing-Miles's October 13, 2005 letter, which seemingly
responds to Plaintiff's September 14, 2005 email (DE 21-1 at 50-51); (2) Ewing-
Miles's February 6, 2007 letter, which seems to refer to the February 7, 2006
closure of Case No. 98-54090 (Bankr. E.D. Mich.) (DE 21-1 at 66-67); and (3) a

The Court should conclude that Plaintiff's federal statutory causes of action against Defendants WSU and/or Ewing-Miles do not state claims upon which relief may be granted.

i.      **Federal Family Education Loan Program (FFELP) (20 U.S.C. §§ 1071-1087-4, 34 C.F.R. Part 682)**

Plaintiff claims that lender Defendant WSU – "failed to conduct its federally insured student loan affairs in accordance with applicable regulations[,]" and she further alleges that Defendants WSU and Ewing-Miles did not promptly pursue collection efforts and that the failure to "timely submit" a defaulted federally insured student loan to the USDE "is grounds for denial of insurance coverage." (DE 28 ¶¶ 39-40.)  However, Plaintiff's amended complaint does not adequately allege FFELP claims against Defendants WSU and/or Ewing-Miles.

First, Plaintiff has failed to state a statutory-based FFELP claim against Defendants WSU and/or Ewing-Miles upon which relief may be granted.  Plaintiff seems to be challenging the timing or content of an alleged September 2005 notice from Defendant WSU, which may well have been the aforementioned August 31, 2005 240-day grace notice.  (*See* DE 28 ¶ 45, 51; DE 21-1 at 56.)  Elsewhere, she accuses Defendant WSU of violating the due diligence requirements of 20 U.S.C.

March 5, 2013 response from WSU's assistant general counsel regarding Plaintiff's January 14, 2013 FOIA request (DE 21-1 at 34-36, 37.)  Plaintiff's amended complaint does not explain what was "circular" about Defendants WSU and/or Ewing-Miles's instructions.  (*See*, *i.e.*, DE 28 ¶¶ 45-46.)

21

§§ 1080(d).  (DE 28 ¶ 56; *see also* DE 28 ¶¶ 57-58.)  Relatedly, Plaintiff takes issue with the excuse that Defendants WSU and/or Ewing-Miles gave for not contacting Plaintiff between 1997 and 2005, *i.e.*, that Defendant WSU did not have her address.  (DE 28 ¶¶ 84-85.)  However, if she is challenging WSU's and/or Ewing-Miles's compliance with the notice or other provisions of 20 U.S.C. §§ 1080(d) ("Care and diligence required of holders") (*see* DE 28 ¶¶ 19, 56, 91), then, she is not entitled to relief because this subsection does not invite a private cause of action.  *United States v. Dwelley*, 59 F. Supp. 2d 115, 119 (D. Me. 1999) ("The weight of authority from other jurisdictions, however, indicates that these provisions are in place solely to govern the relationship between insured lenders and the United States and therefore do not enable a cause of action for student borrowers.") (citing multiple cases); *see*, *e.g.*, *Phillips v. Pennsylvania Higher Ed. Assistance Agency*, 497 F. Supp. 712, 723 (W.D. Pa. 1980), *rev'd on other grounds*, 657 F.2d 554 (3d Cir. 1981) ("The due diligence provision [of the Higher Education Act of 1965 (20 U.S.C. §§ 1001-1161aa-1)] was enacted for the benefit of the federal government.  It would be anom[a]lous to hold that a provision enacted for the benefit of the federal government creates a private cause of action for defaulting students.").

Second, Plaintiff's related, regulations-based claims fare no differently.  (*See* DE 28 ¶¶ 19, 56.)  To the extent Plaintiff alleges that Defendants WSU and/or

22

Ewing-Miles committed violations of 34 C.F.R. Part 682 – such as a "gap in collection activity," 34 C.F.R. §§ 682.411(b)(2) or (j), *OR* a failure to comply with 34 C.F.R. §§ 682.205(a)(5)'s "[r]equired disclosures for borrowers who are 60– days delinquent in making payments on a loan[,]" *OR* a failure to comply with a time period set forth in the due diligence loan servicing regulation, 34 C.F.R § 682.208's  – any of which was an alleged basis on which *the USDE* could have refused to guarantee or insure the loans at issue, Plaintiff's amended complaint does not take into consideration "the Secretary's waiver policy for due diligence and timely filing violations[,]" or for curing a violation of 34 C.F.R. Part 682.  *See* 34 C.F.R. § Pt. 682, App. D.  In addition, "plaintiff's allegations of violation of the federal regulations governing guaranteed student loan creditors and of failure to exercise due diligence are improper, because 34 C.F.R. § 682.507 and 682.411 govern the duties owed by creditors holding student loans notes guaranteed by the United States but do not create a private cause of action for a student debtor." *O'Rourke v. Duncan*, No. 4:10-CV-957 CEJ, 2011 WL 1297546, at *6 (E.D. Mo. Mar. 31, 2011) (citing *McCulloch v. PNC Bank Inc.,* 298 F.3d 1217, 1221 (11th Cir. 2002).  While it may be true that federal law gives certain protections *to the USDE* under the above-referenced regulatory scheme, the government may waive or excuse non-compliance, and the student borrower is in no position to assert a private cause of action on this basis.

23

Therefore, Plaintiff has failed to state FFELP statutory or regulation-based claims against Defendants WSU and/or Ewing-Miles.

### ii.        Federal Perkins Loans (20 U.S.C. §§ 1087aa-1087ii, 34 C.F.R. Part 674)

Plaintiff's amended complaint also cites 34 C.F.R. Part 674, which consists of regulations concerning the Federal Perkins Loan Program (DE 28 ¶ 17); however, this paragraph of the amended complaint appears to simply quote portions of an institution's written agreement with the USDE.[15]  Moreover, the amended complaint does not cite a specific section of these regulations.  Thus, even though her amended complaint vaguely alludes to such a claim, Plaintiff has not adequately alleged a separate claim that Defendants WSU and/or Ewing-Miles violated the statutes or regulations governing Federal Perkins Loans, much less which section or how, notwithstanding this Court's affording her a second opportunity to clarify her claims (DE 24).  *See, i.e., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002) (Fed. R. Civ. P. 8(a) was satisfied where "allegations

---

[15] Plaintiff makes this quotation without providing citation to case law or a particular document.  (DE 28 ¶ 17.)  The Court suspects that Plaintiff is either quoting from an agreement between WSU and the USDE or from a case discussing similar agreements.  *See*, *i.e.*, *In re Innes*, 207 B.R. 953, 954 (Bankr. D. Kan. 1997), *subsequently aff'd*, 184 F.3d 1275 (10th Cir. 1999); *In re Huffine*, 246 B.R. 405, 411 (Bankr. E.D. Wash. 2000).  In any case, she has neither pleaded nor demonstrated a factual or legal basis for a third party beneficiary breach of contract claim. *See e.g.,* Mich. Comp. Laws § 600.1405.

give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.").

### b.    Federal constitutional claims

In the introduction to her amended complaint, Plaintiff alleges that various actions by defendants "effectively denied Plaintiff a forum that satisfies requirements for *due process* of law, denied Plaintiff *equal protection* of the laws under the *Fourteenth Amendment* to the *U.S. Constitution*, and deprived Plaintiff [of] any meaningful ability to defend against the claim [that] a debt exists or that a delinquency by Plaintiff gave rise to collection costs, interest and fees."  (DE 28 at 2-3 (emphases added).)  Again, within the "nature of the action and legal claims," Plaintiff generally alleges "violation of [her] constitutional rights," and capaciously mentions the *Fourteenth Amendment*.  (DE 28 ¶¶ 13, 14.)  The only other mention of "due process" and "equal protection" occurs within the following allegation of "facts:"

> Defendants['] determinations concerning its rights and duties affords no *due process* for the rights of individuals challenging their actions, materially affecting the rights of individual student borrow[er]s and working substantial injustice, depriving *student borrowers* of *equal protection* of the laws with no rational basis to do so.

(DE 28 ¶ 72 (emphasis added).)

These paragraphs do not make clear against which defendants these constitutional claims are asserted.[16]  Moreover, those paragraphs within the factual allegations that mention generic "procedures" are similarly nondescript.  (*See* DE 28 ¶¶ 73, 83.)  My January 8, 2016 report and recommendation concluded that Plaintiff's complaint against Defendants WSU and Ewing-Miles was in need of clarification, and suggested that she file an amended complaint which clarifies the types of claims she is bringing against Defendant WSU and the types of claims she is bringing against Defendant Ewing-Miles, pleaded in distinct and *separate counts* for each cause of action alleged and identifying which Defendants are included in each count.  (*See* DE 24 at 13-18.)  Unfortunately, while Plaintiff's February 19, 2016 amended complaint is divided into sections titled "nature of the action and legal claims" and "facts," (*see* DE 28 ¶¶ 10-42, DE 28 ¶¶ 43-92), it remains unclear whether Plaintiff intends to assert Fourteenth Amendment due process and/or equal protection causes of action against Defendants WSU and/or Ewing-Miles.  They have a right to know.  Moreover, Defendants WSU and Ewing-Miles's March 4, 2016 motion to dismiss argues that they are entitled to dismissal of the claims against them, because Plaintiff has failed to state equal protection or

---

[16] By comparison, the non-specific reference to "Defendant's" and "in a manner not sanctioned by the Constitution" appears to refer to Defendants PCR and/or USDE and the August 20, 2011 letter.  (*See* DE 28 ¶¶ 61-64, DE 21-1 at 26-28; *see also* DE 28 ¶ 69.)  More on that follows below, where the Court addresses Plaintiff's claims as to these defendants.

26

due process claims, but Plaintiff's June 10, 2016 response does not expressly

address the Fourteenth Amendment, equal protection or due process.  (*Compare*

DE 30 at 8-11, DE 46.)  For these reasons, the Court should decline to interpret

Plaintiff's amended complaint as adequately alleging any such federal

constitutional theory.[17]

> ### c.      Common law claim that records were "neglectfully" maintained

Plaintiff sweepingly alleges that Defendants "practice and promote

procedures that violate student borrowers' property and consumer rights with no

accountability and in a manner *highly susceptible* to fraud or neglectful

management of records . . . ."  (DE 28 ¶ 73 (emphasis added).)  She also alleges

that "Defendants had the power and ability to validate or disprove the existence of

the alleged debt in ways which Plaintiff has no power or ability, namely access to

records and record keepers able to verify Plaintiff's information about the

emergency loans and the manner which they had been repaid."  (DE 28 ¶ 78.)  She

does not label any count or cause of action as one for "negligence," nor does she

---

[17] Plaintiff appears to admit that Defendant WSU was "an institution that has an agreement with the Secretary pursuant to section 1087c or 1087cc(a) of this title that is seeking the repayment of the amount due from a borrower on a loan made under part C or D of this subchapter after the default of the borrower on such loan[.]"  20 U.S.C. §§ 1091a(a)(2)(C).  (DE 28 ¶ 67.)  Therefore, to the extent Plaintiff attempts a statute of limitations argument against Defendants WSU and/or Ewing-Miles on the basis that it did not assign Plaintiff's loan to the USDE until 2010 – or thirteen years after her 1997 graduation (*see* DE 28 ¶¶ 65-67), such a claim would not be barred by 20 U.S.C. § 1091a(a).

clearly allege duty, breach, causation or damages, the classic elements of negligence. *See Prosser and Keeton on the Law of Torts* § 30, at 164-165 (5th ed. 1984); *see also*, *Ruolo v. Automobile Club of Mich.*, 386 Mich. 324, 328, 192 N.W. 2d 237, 239-240 (1971).   Nor has she heeded my strong suggestion that she plead her claims against Defendants WSU and Ewing-Miles in separate counts (*see* DE 24 at 13-18).  Had she done so, the Court and these Defendants would be able to ascertain whether Plaintiff is even alleging negligence as a separate cause of action; instead, it appears that she is just using the term "neglectful" *descriptively* and in a subjunctive, hypothetical manner at that.  (DE 28 ¶ 73.)  At best, she has only alleged *the threat* of possible, future fraud or neglect.  Thus, the Court should not interpret Plaintiff's amended complaint as adequately alleging a claim for negligence against Defendants WSU and/or Ewing-Miles.

### 3. Plaintiff's claims against Defendant PCR do not satisfy Fed. R. Civ. P. 8(a)(2).

Plaintiff describes defendant PCR as "the debt recovery collection agent of WSU and the [USDE] . . .[,]" and contends that PCR is "one in the same" as the USDE's Default Resolution Group.  (DE 28 ¶ 8; *see also* DE 21-1 at 3-4, 26-28.) Defendant PCR's Fed. R. Civ. P. 12(b)(6) motion to dismiss argues that Plaintiff has failed to apprise PCR "of the claims against it or the factual basis for any liability on its part," and, thus, does not comply with Fed. R. Civ. P. 8(a)(2) or Fed. R. Civ. P. 9(b).  (*See* DE 43 at 10-18.)  After examining the "nature of the action

28

and legal claims" portion of Plaintiff's amended complaint, the Court should
conclude that Plaintiff is attempting to bring claims against Defendant PCR based
upon the Fair Debt Collection Practices Act (FDCPA) and the Michigan Consumer
Protection Act (MCPA).  (DE 28 ¶¶ 10-42.)

### a.   MCPA

The MCPA is codified at Mich. Comp. Laws §§ 445.901-445.922.  Plaintiff
generally alleges that defendants "violated the Michigan Consumer Protection
statutes . . ." and more specifically alleges that, "[u]nder Michigan law, Pioneer
acting as the agent of its codefendants violated statutory consumer protection
provisions."  (DE 28 ¶¶ 14, 34.)  Notably, the MCPA contains multiple subsections
pertaining to specific, prohibited conduct.  For example, the Act provides that
"[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct
of trade or commerce are unlawful[,]" but then defines this phrase with no less than
37  prohibited acts.  Mich. Comp. Laws § 445.903(1)(a)-(kk).  Even if the Court
considers the amended complaint's paragraphs within the section labeled "nature
of the action and legal claims" that mention "unfair," "unconscionable," or
"deceptive," (DE 28 ¶¶ 24, 26, 35-37; *see also* DE 28 ¶¶ 77, 80), Plaintiff fails to
identify any applicable MCPA statutory subsections under which she brings such a
claim.  In addition, "the courts have recognized that a person or entity engaged in
debt collection activities is either a 'collection agency' under the Occupational

Code or a 'regulated person' under the MCPA, but not both." *Misleh v. Timothy E. Baxter & Assocs.*, 786 F. Supp. 2d 1330, 1337 (E.D. Mich. 2011); *see also Wolfe v. GC Servs. Ltd. P'ship-Delaware*, No. CIV. 08-10628, 2009 WL 230637, at *10 (E.D. Mich. Jan. 30, 2009). Plaintiff alleges that the FDCPA "applies to" PCR, and PCR seems to admit that it is a "debt collector" as defined by 15 U.S.C. § 1692a(6). (DE 28 ¶¶ 22-27, DE 43 at 13.) But the clarity ends there. In sum, as to the MCPA, Plaintiff's allegations against Defendant PCR are conclusory and do not satisfy the pleading requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

### b.   FDCPA

Plaintiff makes several references to sections of the FDCPA, including 15 U.S.C. §§ 1692(a),(e),(f),(g),(k). (*See* DE 28 ¶¶ 24, 26-27, 37, 41-42; *see also* DE 28 ¶ 77, 80.) Such a claim must be alleged in accordance with Fed. R. Civ. P. 8. *See Moore v. Bank of Am.*, No. 12-12907, 2012 WL 6194225, at *5 (E.D. Mich. Nov. 13, 2012), *report and recommendation adopted*, No. 12-CV-12907, 2012 WL 6191499 (E.D. Mich. Dec. 12, 2012) ("Plaintiff's claim that FDCPA was violated by the failure to validate the loan does not meet the pleading requirements of Fed.R.Civ.P. 8(b).").

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.

30

§ 1692e.  This includes "[t]he false representation of-- . . . the character, amount, or legal status of any debt . . . ."  15 U.S.C. § 1692e(2)(A).  Moreover, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  With respect to validation of debts, the FDCPA provides requirements for the contents of a notice of debt and procedures with respect to disputed debts.  (*See* 15 U.S.C. § 1692g(a),(b)).  Moreover, the Act provides for civil liability.  15 U.S.C. § 1692k.

For purposes of this motion, Defendant PCR does not appear to contest that it is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).  (DE 28 ¶ 23, DE 33 ¶ 23.)  Instead, PCR maintains that Plaintiff "does not specifically set forth the four elements necessary to state a claim under the FDCPA[,]" or that her attempts to bring such a claim are factually unsupported and conclusory within the four corners of the pleading.  (DE 43 at 12-15.)  I agree.

Here, the Court should conclude that Plaintiff's FDCPA claims against Defendant PCR fail to provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  Without elucidating how, Plaintiff alleges that PCR "fraudulently secured color of federal authority to carry out an illegal exaction of plaintiff's tax refund by means of an offset."  (DE 28 ¶ 15.)  She also alleges that PCR "collected on the alleged debt by execution of an extrajudicial garnishment and a tax offset[,]" "executed these offsets without

31

ever notifying Plaintiff it had availed itself of these specific remedies and obtained

Plaintiff's money[,]" and "misrepresented" its obligations.  (DE 28 ¶¶ 20-21.)

Furthermore, after alleging that the "FDCPA applies to [PCR][,]" Plaintiff avers

that PCR, somehow, "purposely confuses" its actions as a "debt collector" and the

USDE's actions.  (*See* DE 28 ¶¶ 22, 25.)

However, despite several of her allegations,[18] Plaintiff has not alleged with

specificity how, when or by what means Defendant PCR made a false or

misleading representation regarding the *character*, *amount* or *legal status* of the

debt.  15 U.S.C. § 1692e(2)(A).  Nor has she specified in her pleadings how

Defendant PCR used an unfair or unconscionable practice to collect or attempt to

collect the debt.  15 U.S.C. § 1692f.  As PCR points out, "Plaintiff offers no

supporting factual detail regarding what specific 'actions' or which specific

'communications' she alleges run afoul of the law."  (DE 43 at 14.)  True, Plaintiff

simply alleges that defendants PCR, WSU and Miles "misrepresented the dollar

amounts that would have been due in excess of the principal of the loans, including

collection charges and interest because doing so was necessary in order create the

appearance due diligence compliance occurred."  (DE 28 ¶ 26, 31.)  However, PCR

correctly points out that Plaintiff "offers no detail regarding who, what, when,

where or how Pioneer purportedly misrepresented the amounts alleged to be owed

---

[18] (*See, i.e.,* DE 28 ¶ 28 & DE 21-1 at 26-28; DE 28 ¶¶ 59-60 & DE 21-1 at 3-4;
DE 28 ¶ 52 & DE 21-1 at 33.)

to the [USDE] leaving Pioneer to, again, guess as to how Pioneer, itself, allegedly violated the law."  (DE 43 at 14.)  Finally, if by this statement she intended to invoke 15 U.S.C. § 1692f(1)'s prohibition unauthorized or illegal amounts, she has not alleged how the "collection charges" or "interest" are not "expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C.A. § 1692f(1).

That leaves the Court's consideration of whether Plaintiff has alleged a violation of 15 U.S.C. § 1692g ("Validation of debts").  In the amended complaint, Plaintiff takes issue with the August 20, 2011 communication she received from the USDE or PCR (DE 21-1 at 26-28), such as:

- While the letter claims "[t]he loan was declared in default," it does not "identify the date of the default declaration[,]" and, in any event, whenever WSU and Miles declared the loan in default, "it would have been more than eight years beyond the federal due diligence deadlines for doing so."  *See* 20 U.S.C. §§ 1080(d) and 1085(f), (DE 28 ¶ 29; *see also* DE 28 ¶¶ 19, 56.)

- With respect to accrued interest and collection costs, Plaintiff notes an apparent discrepancy between (a) the letter's representation that the loan entered the database on December 27, 2010, and (b) the June 1, 2011 debt statement listing the date of transfer as November 16, 2010.  (DE 28 ¶ 30; *compare* DE 21-1 at 26-28, 33.)

(*See also* DE 28 ¶¶ 61-64, DE 21-1 at 26-28.)  Unfortunately, the amended complaint's only reference to the FDCPA statute regarding validation of debts - 15 U.S.C. § 1692g (DE 28 ¶ 37) – simply gives a recitation of law, without explaining how it was allegedly violated, which leaves the Court "to guess at the nature of the

claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Plaintiff's above-described complaints with the August 20, 2011 letter - the date of the default declaration or an apparent discrepancy in the date of the assignment or transfer of the debt (DE 28 ¶¶ 29, 30) – are not express challenges of the "amount of the debt" or the "name of the creditor to whom the debt is owed[.]"  15 U.S.C. § 1692g(a)(1),(2).  Thus, Plaintiff has failed to state a claim against Defendant PCR based upon 15 U.S.C. § 1692g(a).[19]

Moreover, she has failed to state an FDCPA claim against Defendant PCR regarding her dispute of the debt.  The related subsection provides:

> If the consumer notifies the debt collector in writing *within the thirty-day period described in subsection (a) of this section* that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector *obtains verification* of the debt or a copy of a judgment, or the name and address of the original creditor, and *a copy of such verification or judgment*, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue *during the 30-day period* referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication *during the 30-day period* may

---

[19] Even if the Court assumed that Plaintiff's challenge to these dates affected the calculation of interest and, thereby, alleged a violation of 15 U.S.C. § 1692g(a), Plaintiff's basis for damages under 15 U.S.C. § 1692k is unclear.  (DE 28 ¶ 42.)

not overshadow or be inconsistent with the disclosure of the
consumer's right to dispute the debt or request the name and address
of the original creditor.

(15 U.S.C. § 1692g(b) (emphases added).)  Plaintiff claims Defendant PCR

"blindly accepted" Defendants WSU and Miles's representations.  (DE 28 ¶¶ 32-

33.)  Plaintiff also seems to allege she got the "run-around"[20] and takes issue that

her challenge was adjudicated by PCR (a.k.a. the Default Resolution Group) rather

than an ALJ, as suggested by her June 2014 request for review form, and consisted

of "advocacy on behalf of the defendants rather than an actual impartial

adjudication of any issue [she] raised."  (DE 28 ¶ 81.)  Furthermore, Plaintiff

alleges, "WSU, Pioneer and the Department acted despite Miles noncompliance

with its obligations under federal law with respect to loan monies and notification

to borrowers."  (DE 28 ¶ 91.)  However, it appears that Plaintiff's first

communication to either PCR or the USDE following the 2010 assignment of the

---

[20] After alleging that PCR "represents itself as a federal agency in its
communications with Plaintiff[,]" Plaintiff alleges, as discussed above, that PCR
and WSU gave her "circular instructions" and that defendants, generally, gave her
the runaround.  (DE 28 ¶¶ 38, 79.)  As noted earlier, these paragraphs are without
detail.  Relatedly, Plaintiff responds that PCR "acted as the agent that carried out
the unlawfully exaction on behalf of USDE and WSU[,]" or that Plaintiff was
repeatedly "routed back to [PCR] to dispute the account."  (DE 46 at 2, DE 46 at 3
¶ 4.)  Unfortunately, these statements either do not clarify Plaintiff's claims about
the alleged errors of Defendant PCR's ways or only generally allege that
Defendant USDE routed Plaintiff back to PCR.  More to the point, while they at
best indicate that Plaintiff felt *frustrated*, they do not equate to actual causation and
damage.

debt occurred by way of Plaintiff's June 2014 request for review.  (DE 21-1 at 16-25.)  Thus, even operating from the date of the August 20, 2011 communication, Plaintiff's June 2014 request for review was untimely and could not have operated to invoke PCR's obligation to obtain verification of the debt under 15 U.S.C. § 1692g(b).[21]

### 4. Defendants USDE and Duncan ("the federal defendants") are entitled to summary judgment regarding Plaintiff's APA claims against them.

As noted in the foregoing time line, Plaintiff's debt appears to have been transferred to the USDE on or about **November 16, 2010**.  (DE 21-1 at 33, 52; *see also* DE 28 ¶¶ 7, 30.)  By a letter dated **May 17, 2011**, Plaintiff was informed that the USDE had assigned her account to PCR for collection.  At that time, the alleged balance was $10,307.55, comprised of $6,500 in principal, $1,789.81 in interest and $2,017.74 in fees and costs.  (DE 21-1 at 32.)  The USDE's **June 1, 2011** debt statement, which was apparently mailed to Plaintiff at her Eastpointe, Michigan address, indicated that $1,729.50 had been paid to the USDE, but also

---

[21] Defendant PCR makes other arguments for the dismissal of Plaintiff's claims against it, such as failure to allege the elements of a 42 U.S.C. § 1983 claim and failure to sufficiently allege claims of conversion or fraud.  (DE 43 at 11-12, 15-16.)  However, if the Court agrees that Plaintiff's amended complaint against Defendant PCR is limited to the FDCPA and MCPA, then it need not address Defendant PCR's other arguments.  Here, it is worth noting, as Defendant PCR points out, that the $4,438 in payments – seemingly $250 on April 26, 2012 and $4,188 on July 26, 2012 – offset Plaintiff's debt.  In other words, the tax refund offset was transmitted to the USDE's Federal Offset Unit and was not kept by PCR.  (DE 28 ¶¶ 48-50; DE 28 at 20 ¶ B; DE 43 at 15, 18; DE 21-1 at 4.)

that a total of $8,302.27 ($6,500 in current principal and $1,802.27 in current accrued interest) was eligible for offset by the date of the debt statement.  (DE 21-1 at 33; *see also* DE 28 ¶ 8.)  The USDE FSA letter dated **August 20, 2011** informs Plaintiff that it needs "specific evidence from [her] that this debt has been settled[,]" and that her outstanding balance was $10,412.75.  (DE 21-1 at 36-38.) However, it does appear that the USDE received Plaintiff's first payment on **April 26, 2012**, in the amount of $250.00, by way of a tax offset and that the USDE received a $4,188 offset payment on **July 26, 2012**.  (DE 21-1 at 4; DE 28 ¶¶ 48-50.)  By a letter from USDE FSA dated **July 9, 2014**, Plaintiff was informed that the outstanding balance on her account was $4,725.25 as of **July 8, 2014**, including $4,305.61 in unpaid principal and $419.64 in accrued interest.  (DE 21-1 at 3-4.)

Without specificity, Plaintiff broadly alleges that Defendants USDE and Duncan "expressly authorize[d]" PCR's actions and "misrepresented to Plaintiff" PCR's obligations under federal law.  (DE 28 ¶¶ 21.)  Plaintiff points out that the USDE's June 1, 2011 debt statement lists November 16, 2010 as the date the earliest debt was transferred to the USDE, not December 27, 2010 as listed in the USDE FSA's August 20, 2011 letter.  (DE 21-1 at 26-28, 33; DE 28 ¶ 30.)  It is unclear why this six week discrepancy is material, whether Plaintiff somehow suffered damages as a result, and, if so, how.

37

Moreover, Plaintiff points to the USDE FSA's July 9, 2014 letter, which lists July 26, 2012 as the date of the last offset payment of $4,188.00. (DE 21-1 at 3-4, DE 28 ¶ 48.) After alleging that the lender and its agents were untimely in submitting the "defaulted federal insured student loan" claim to the USDE (DE 28 ¶ 39), Plaintiff contends:

> The administrative process Plaintiff had been directed to pursue through the [USDE] was biased and prejudiced in favor of Defendants. There is no actual process for an impartial determination. Defendants justify their actions on the basis of common law, but selectively recognize only those laws that support Defendants' taking of property despite being advised there is no debt.

(DE 28 ¶ 69.) She fails to explain how any of this was so, and a blanket allegation that administrative proceedings were "biased," unfair, "prejudiced," or partial – an accusation virtually anyone on the losing end of an adjudicative process might assert – is conclusory. Elsewhere, Plaintiff claims that Defendants "violated the [f]ederal [APA] in addressing Plaintiffs' efforts to challenge the debt and the tax offset[,]" again without identifying how the violation occurred or how she was injured thereby. (DE 28 ¶ 82.)

Based on the foregoing, the Court interprets Plaintiff's amended complaint as attempting to allege that Defendants USDE and Duncan improperly offset her tax refund in violation of 31 U.S.C. § 3720A and that her June 5, 2014 request for review/objection to the offset was not handled in accordance with the APA. (DE 21-1 at 16-25, DE 28 ¶¶ 15, 16, 55, 69, 71, 81 & 82.) Defendants USDE and

38

Duncan ("the federal defendants") argue that the USDE's "final agency decision addressing the treasury offset and Plaintiff's indebtedness did not violate the APA."  (DE 41 at 20-29.)[22]  As framed by Defendants USDE and Duncan's reply (DE 47), the Court should conclude that these defendants are entitled to summary judgment as to Plaintiff's APA claims against them:

> **a.** **This was a "past-due, legally enforceable debt[,]" 31 U.S.C. § 3720A(a).**

Plaintiff's June 10, 2016 response invokes both 31 U.S.C. § 3720A ("Reduction of tax refund by amount of debt") and judicial review portions of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.  (*See* DE 46 ¶¶ 1, 9, 10 & 12.) She contends that "[t]he USDE account is not a past-due legally enforceable debt[,]" as she "was not in default."  (DE 46 ¶¶ 1-2.)  Plaintiff explains that beginning in 1993 and continuing through 1996, she "borrowed emergency loan moneys from the law school[,]" but "repaid *these funds* in the manner mandated by

---

[22] Based upon the amended complaint's allegation that defendants "committed conversion [and] fraud . . ." and "engaged in false, deceptive, and misleading representation[,]" the federal defendants further argue that Plaintiff's amended complaint "does not state a viable FTCA claim" against them.  (DE 28 ¶¶ 14, 77; DE 41 at 29-31.)  If the Court agrees that Plaintiff's claims against these defendants are limited to an alleged violation of the APA, then the Court need not address the federal defendants' argument.  In any case, these references to fraud and conversion, if meant to be treated as separate common law claims, suffer from the same fatal defects and lack of specificity discussed earlier in Section II.E.2.

the law school."  (DE 46 ¶ 5 (emphasis added).)  Notably, Plaintiff does <u>not</u> allege that she repaid her federal/Perkins loans, which are at issue in this action.

In fact, the administrative record evidences a "past-due, legally enforceable debt."  During 1993 and 1996, Plaintiff executed five Federal Perkins Loan Program promissory notes totaling $6,500.00.  (DE 21-1 at 41-45, 68-72.)[23]  The date of default is November 2, 2005.  (DE 21-1 at 38-40, 52.)  A total debt of $8,153.88 ($6,500 in principal and $1,651.88 in interest) was assigned to the Debt Management Collections System (DMCS) on November 16, 2010 or December 27, 2010.  (DE 21-1 at 10, 38-39, 52-59.)  The federal defendants contend this assignment was effectuated pursuant to Federal Perkins Loans statute 20 U.S.C. § 1087cc(a)(4).  (DE 47 at 2.)

This evidence of a "past-due, legally enforceable debt" is not changed by Plaintiff's allegation she "repaid all emergency loans received under the terms set by WSU law school, and repaid these funds in full by 1997."  (DE ¶ 43; *see also* DE 46 ¶ 5.)  Although Plaintiff alleges she "attempted in good faith" to "prove that the *emergency loan funds issued from the law school* had been repaid[,]" (DE 28 ¶ 47 (emphasis added)), her contentions that she "has no unpaid student loan" or that she "repaid all *emergency loans*" by 1997 or that "there was no unpaid loan[,]"

---

[23] The Student Accounts Receivable Reports from August 1993 through October 1997 show the application of *at least some* of these Federal Perkins Loans to Plaintiff's WSU account.  (DE 21-1 at 46-49.)

(DE 28 ¶¶ 11, 43, 58 (emphasis added)) do not allege that she repaid her *Federal Perkins Loans*.

Instead, the administrative record supports the federal defendants' contention that Plaintiff's emergency loans "were paid back *with funds from her Perkins Loans*, leaving the Perkins Loans balances due." (DE 47 at 3 (emphasis in original).) During September 2005, Plaintiff contacted Defendant WSU and/or Defendant Ewing-Miles regarding a Perkins Loan repayment notice Plaintiff had received. (DE 21-1 at 50.) In a letter to Plaintiff dated October 13, 2005, Ewing-Miles explained:

> **Perkins loans are financial aid awarded by the [USDE] and, in contrast, emergency loans are provided by the University to assist students with expenses. You are correct in that emergency loans must be repaid by the end of the semester and more often than not they are repaid by financial aid awards once received *as was the case with your account*.**

(DE 21-1 at 51 (emphases added).) This is consistent with the federal defendants' assertion that WSU's law school "had the practice of advancing emergency loans to students at the beginning of a semester until later in the semester when other financial aid payments arrived, at which time the emergency loans were repaid." (DE 47 at 3.)

Plaintiff alleges that she "argued [to Defendants] that there were clear discrepancies that undermined [the] fact of the existence of a debt, which should make it obvious to defendants that the debt was not valid." (DE 28 ¶ 76.)

41

However, it is unclear from the pleadings what these discrepancies actually are. Plaintiff not having provided any evidence within her control that she repaid her Federal Perkins Loans – such as copies of cancelled checks, personal account statements, etc. – and the administrative record containing "Award Maintenance" records of $6,500 in Federal Perkins Sub Loans for law school (DE 21-1 at 79-83), evidence of an April 26, 2012 payment of $250.00 and a July 26, 2012 payment of $4,188 (DE 21-1 at 13-14), as well as an account inquiry dated February 11, 2013 which lists a principal and interest past due of $6,500 and $1,651.88, respectively (DE 21-1 at 52-59), the Court is left with undisputed record evidence that the principal balance on the aforementioned five Federal Perkins Loans was $6,500 at the time the debt was assigned or transferred to the USDE in 2010.[24]

### b.   Plaintiff did not properly avail herself of the available agency process.

Plaintiff contends that she "was never afforded a hearing before an [ALJ] regarding the account, not before or after the assignment to the USDE." (DE 46 ¶ 2.) Then, apparently alluding to 5 U.S.C. § 554 of the APA, Plaintiff claims she "could not afford the expense of traveling to a southern State for a hearing before

---

[24] The Debt Management Collections System (DMCS) transactions list shows other payments, but the Court cannot tell whether these are related to Plaintiff's student loans at issue in this case. (*See* DE 21-1 at 14-15.)  Also, there are payments to Plaintiff's student accounts receivable between 1993 and 1997, but, again, the Court cannot distinguish all of them.  (*See* DE 21-1 at 46-49.)

an ALJ to dispute the offset[,]" and "[t]here was no meaning[ful] opportunity for a

hearing." (DE 46 ¶¶ 3-4.) Plaintiff further alleges:

> Strict limitations were placed on the right to a telephone hearing. It
> was not Plaintiff's choice to have no hearing at all. The entity that
> made the final written determination on behalf of USDE directed
> Plaintiff that her only remaining option was to file a federal lawsuit.

(DE 46 ¶ 11.) The USDE – or Default Resolution Group on its behalf – rendered a

decision on July 9, 2014, concluding that the outstanding balance was $4,725.25.

(DE 21-1 at 3-4.) Plaintiff takes the position that the federal defendants should not

be permitted to argue that it is now too late for Plaintiff to file an administrative

claim with the USDE "[i]f the government is misdirecting petitioners with respect

to their rights" and ""thwarting petitioners' efforts." (DE 41 at 9, 18; DE 46 ¶¶ 16-

18.) Plaintiff seemingly asserts that the Court need not "defer to the agency

decision that plaintiff's debt was valid and the Treasury offset proper[,]" because

""there has been no review by an ALJ." (DE 41 at 29, DE 46 ¶ 19.) According to

Plaintiff, her challenge to the debt "was adjudicated by the Default Resolution

Group[,]" – apparently a division or department of the USDE but which Plaintiff

assumes is "one in the same" as Defendant PCR- and was "advocacy on behalf of

the defendants rather than an actual impartial adjudication of any issue Plaintiff

raised." (DE 21-1 at 26-28, DE 28 ¶¶ 8, 81.)

Here, the Court should conclude that Defendants USDE and Duncan

afforded Plaintiff the process she was due. First, the USDE sent Plaintiff a debt

statement dated June 1, 2011 and a letter dated August 20, 2011.  (DE 21-1 at 33, 26-28.)  Although Plaintiff attributes the latter as sent by the Default Resolution Group on behalf of Defendant PCR, she does not dispute receiving these items. (DE 28 ¶¶ 8, 28-30.)

Second, Plaintiff has not alleged a sufficient challenge to the USDE's June 1, 2011 and August 20, 2011 mailings.  The regulations provide that "[t]he written notice *informs the debtor regarding*:

(1)  The nature and amount of the debt;

(2)  The Secretary's intent to collect the debt by offset;

(3)  The debtor's opportunity to:

(i) Inspect and copy Department records pertaining to the debt;

(ii) Obtain a review within the Department of the existence or amount of the debt; and

(iii) Enter into a written agreement with the Secretary to repay the debt;

(4)  The date by which the debtor must request an opportunity set forth under paragraph (b)(3) of this section; and

(5)  The Secretary's decision, in appropriate cases, to switch the debtor from advance funding to a reimbursement payment system.

34 C.F.R. § 30.22(b) (emphasis added).  To be sure, Plaintiff generally challenges Defendant PCR's assertion that it provided a "65 day notice" on June 1, 2011 on Defendant USDE's behalf, specifically alleging that the August 20, 2011 letter

44

"does not identify the date of the default declaration[,]" and "did not identify the source of the $250[,]" (DE 28 ¶¶ 52, 29, 49), and that the April 26, 2012 payment of $250 was intercepted "without any notice to Plaintiff and before it could be paid to Plaintiff[,]" (DE 28 ¶ 50).  Nonetheless, even though the administrative record appears to contain only one page of the June 1, 2011 notice (DE 21-1 at 33), this page explains that the USDE "holds the following defaulted student loan(s) or grant claim(s) which it intends to collect by treasure offset . . . ." and further identifies the amount eligible for offset as $8,302.27 ($6,500 in current principal and $1,802.27 in current accrued interest).  (DE 21-1 at 33.)  Thus, the administrative record belies a claim that the June 1, 2011 notice does not satisfy Subsections (1) or (2) of 34 C.F.R. § 30.22(b).

Third, Plaintiff's June 4, 2014 request for review was untimely, as it was filed well beyond the period permitting for requesting review.  *See* 34 C.F.R. § 30.33 ("*Sixty-five days after* the date of the notice provided under § 30.22[.]") (emphasis added).  Specifically, following the USDE's 2011 mailings, Plaintiff did contact Dean Brown by way of a September 22, 2011 e-mail; however, it does not appear that Plaintiff contacted the USDE until her June 4, 2014 request for review and June 9, 2014 addendum to her request for review – dates long *after* the April 26, 2012 and July 26, 2012 offset payments.  (DE 21-1 at 29-30, 16-19, 84, 3-4.)

45

Fourth, even though the June 1, 2011 USDE debt statement provided that "any in-person hearing w[ould] be held in Atlanta[,]" Plaintiff's request for review form did not seek an in-person or telephone hearing.  In fact, she checked off that she wanted a review of her objection "based on this written statement and the records in [her] debt file."  (DE 21-1 at 16-17, 33.)

In other words, Plaintiff was afforded the process she was due but, as the federal defendants argue, "did not take advantage of the available agency process."  (DE 47 at 5.)

        **c.**        **Any delay in seeking repayment does not bar the enforcement of this debt.**

As to the federal defendants' claim that WSU did not pursue collection between 1997 and 2005 because "it did not have a valid address for plaintiff," Plaintiff contends this assertion "is not credible and is contrary to the record."  (DE 41 at 23 n.2, DE 46 ¶ 6.)  Plaintiff claims she was working for WSU and residing in WSU housing from 1997 through 2005.  (DE 46 ¶ 7; *see also* DE 46 ¶ 8.)  Moreover, she claims that WSU and Miles "assigned this claim to [the USDE] thirteen years" following her 1997 graduation.  (DE 28 ¶¶ 43, 65-66.)

However, even if Plaintiff were correct, the statutes governing student assistance programs provide, "[i]t is the purpose of this subsection to ensure that obligations to repay loans and grant overpayments are enforced without regard to any Federal or State statutory, regulatory, or administrative limitation on the period

46

within which debts may be enforced." 20 U.S.C. § 1091a(a)(1). Moreover, "no limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment, or other action initiated or taken . . . ." 20 U.S.C. § 1091a(a)(2). Additionally, despite her allegation that "[t]he protections cited by Defendants, and used to justify taking of Plaintiff's property do not apply[,]" Plaintiff appears to admit that Defendants fall within the definition of 20 U.S.C. § 1091a(a)(2)(C). (DE 28 ¶ 67.) Finally, it follows that Defendant Duncan, as then Secretary of the USDE, may pursue "repayment of the amount due from a borrower on a loan made under this subchapter and part C of subchapter I of chapter 34 of Title 42 that has been assigned to the Secretary under this subchapter and part C of subchapter I of chapter 34 of Title 42." 20 U.S.C. § 1091a(a)(2)(D). In other words, even if there was a delay between the 2010 transfer or assignment of the debt to the USDE and the USDE's attempts to collect on this debt during 2011, it remains that there is no "limitation on the period within which debts may be enforced." 20 U.S.C. § 1091a(a)(1).

**F.   Conclusion**

The Court is mindful of Plaintiff's request for consideration and leniency, as well as the request in her motion response for "one final additional opportunity to amend her complaint, to describe with specificity the particular wrongdoing of each individual defendant[,]" a seeming admission that her pleadings are still

47

inadequate.  (DE 46 ¶¶ 20, 22.)  However, this should have been accomplished with the filing of her February 19, 2016 amended complaint, as this Court previously pointed out the need for clarification of Plaintiff's original complaint's claims against Defendants PCR, WSU and Ewing-Miles and also advised:  "It will . . . not suffice to sweepingly allege violations of constitutional, statutory, regulatory or common law without identifying the specific law violated, the manner in which it was violated, and the parties who violated it."  (*See* DE 24 at 10-18.)  "Although Rule 15(a) states that leave to amend 'shall be freely given when justice so requires,' the district court may consider that the moving party failed to take advantage of earlier opportunities to amend."  *Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) (citations omitted); *see also City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011) ("'the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'") (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989)).  Moreover, "[i]n keeping with the purposes of the rule, the court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation."  *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982).  Even if, *arguendo*, the Court were to construe Plaintiff's passing mention of a future amended pleading as a properly filed motion for leave to

amend under Fed. R. Civ. P. 15 (and ignoring the fact that she has failed to enlighten the Court as to what such a newly proposed pleading might say, as required by E.D. Mich. LR 15.1), such a motion should be denied.  After five briefs on the inadequacy of her pleadings having been filed by the Defendants (not counting reply briefs), two extensive reviews of her pleadings by this Court, and unheeded direction as to how to correct the multiple problems displayed in her initial pleading, judicial economy disfavors further amendment, and a third bite at the apple is unwarranted.

In sum, the Court should conclude that:  Defendants WSU and Ewing-Miles are entitled to dismissal as to Plaintiff's various claim(s) against them (Section II.D.3); Defendant PCR is entitled to dismissal as to Plaintiff's MCPA and FDCPA claim(s) against it (Section II.D.4); and Defendants USDE and Duncan ("the federal defendants") are entitled to summary judgment as to Plaintiff's APA claims against them (Section II.D.5).  If the Court agrees that Plaintiff has not successfully pleaded a federal constitutional or statutory claim, then it should decline to exercise supplemental jurisdiction over remaining state or common law claims, if indeed there are any.  *See* 28 U.S.C. § 1367.

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 12, 2017      s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 12, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti